FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jan 23 2026

KEVIN P. WEIMER , Clerk

By: s/ Neethu Varghese
Deputy Clerk

# United States District Court
NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

JUAN CARLOS SOLANO LORENZO AND JORGE LUIS RAMIREZ BIBIANO

**CRIMINAL COMPLAINT**

Case Number: 1:26-MJ-070

I, Vincent Wood, the undersigned complainant, depose and say under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

On or about January 21, 2026, in Fulton County, in the Northern District of Georgia, defendants, **Juan Carlos Solano Lorenzo** and **Jorge Luis Ramirez Bibiano**, did knowingly and intentionally possess with intent to distribute a controlled substance, said act involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(l)(A), all in violation of Title 21, United States Code, Section 841(a)(1).

On or about January 21, 2026, in Fulton County, in the Northern District of Georgia, defendant, **Jorge Luis Ramirez Bibiano**, did knowingly possess a firearm, in or affecting interstate commerce, knowing that he was an alien illegally and unlawfully in the United States, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

I further state that I am a Special Agent of the Drug Enforcement Administration and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Vincent Wood*
Signature of Complainant
DEA Special Agent Vincent Wood

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| January 23, 2026 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

J. ELIZABETH MCBATH
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

ATTEST: A TRUE COPY CERTIFIED THIS
Date: Jan 23 2026
KEVIN P. WEIMER, Clerk
By: s/ Neethu Varghese
Deputy Clerk

SAUSA Amy Schwarzl

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Vincent Wood, a Special Agent with the Drug Enforcement Administration (DEA), hereby depose and state under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

### Introduction

1. This affidavit is submitted in support of an application for a criminal complaint against **Juan Carlos Solano Lorenzo** and **Jorge Luis Ramirez Bibiano**.

2. There is probable cause to believe that on or about January 21, 2026, in the Northern District of Georgia, **Juan Carlos Solano Lorenzo** and **Jorge Luis Ramirez Bibiano** did knowingly and intentionally possess with intent to distribute a controlled substance, that is, at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(A).

3. There is probable cause to believe that on or about January 21, 2026, in the Northern District of Georgia, defendant, **Jorge Luis Ramirez Bibiano**, did knowingly possess a firearm, in or affecting interstate commerce, knowing that he was an alien illegally and unlawfully in the United States, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

**Affiant Background**

4.  I am a Special Agent with the DEA and have been so employed since August 2022. As a DEA Special Agent, I have received seventeen weeks of specialized training at the DEA Training Academy in Quantico, Virginia. This training focused on methods of unlawful drug trafficking; the means by which drug traffickers and/or manufacturers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. Prior to my employment as a Special Agent with the DEA, I was employed as a military officer with the United States Air Force from December 2015 to August 2022.

5.  In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 924(c), 1952, 1956, and 1957. I have received training in the enforcement of the drug laws, investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, financial/money laundering investigations, and the use of electronic surveillance.

6.      I am familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone conversations, wiretap investigations, defendant debriefings, the use of confidential sources, undercover operations, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs.

7.      I have participated in numerous drug investigations, in which traditional methods of investigation were used that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized. In connection with those and other narcotics cases, I have participated in follow-up investigations relating to the laundering and concealment of assets, analysis of bank and other financial records, and identification of conspirators through ledgers, telephone bills, records, and photographs.

8.      Based upon training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug trafficker's import and distribute drugs. I also am familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple

vehicles as conveyances for drugs and drug proceeds, the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds, the use of electronic wires, and the use of off-shore accounts to launder and conceal assets.

9. Based on my training, experience, and discussion with senior agents, drug traffickers commonly utilize and possess firearms to protect their narcotics, proceeds, and themselves from rival traffickers and law enforcement. Firearms are also used as tools of intimidation and enforcement within drug trafficking organizations.

10. Based upon my training and experience in wire and electronic intercept investigations, I know that drug traffickers often attempt to thwart law enforcement efforts by frequently changing, and fictitiously registering, vehicles, telephones, and utility services to conceal their true identities. Again, all these steps are designed to avoid detection and possible prosecution.

## **Sources of Information**

11. This affidavit is based upon my personal knowledge, derived from my participation in this investigation; information that I have learned from discussions with special agents and task force officers of the DEA; from the review of written reports of investigations, arrests and seizures; from the review of reports of physical surveillance conducted by the state and local officers or other federal agents; from electronic surveillance techniques; from

the review of reports of debriefings of sources of information and other witnesses; and information from other records and documents obtained in this investigation.

12. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have has read and reviewed. Such statements are stated in substance, unless otherwise indicated. Wherever in this affidavit I state a belief, such belief is based upon my training and experience and the information obtained through this investigation.

13. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every fact known to me concerning this investigation. Rather, I have set forth only those facts necessary to establish the required basis for a complaint.

## Probable Cause

### December 4, 2025: Solano and Ramirez sold one kilogram of methamphetamine

14. On December 4, 2025, Juan Carlos Solano Lorenzo and Jorge Luis Ramirez Bibiano sold one kilogram of methamphetamine to another individual.

15. The sale took place at 1156 Woodland Ave NE, Atlanta, GA 30324, located within the Northern District of Georgia. Ramirez delivered a bag

containing one kilogram of methamphetamine, a Schedule II controlled substance in exchange for $2,100. Solano drove Ramirez in a gray Mustang to this deal.

16. On January 12, 2026, agents from HIDTA Group 3 located the gray Mustang at the Morningside Courts complex, located at 594 Wimbledon Rd NE, Atlanta, GA 30324, within the Northern District of Georgia (the Morningside Courts complex).

January 14, 2026: Solano sold one kilogram of methamphetamine

17. On January 14, 2026, DEA HIDTA Group 3 agents surveilled the gray Mustang and saw it return to the Morningside Courts complex. Solano got out of the Mustang, retrieved multiple shopping bags, and entered 594 Wimbledon Rd NE, Apartment 4121 (Apartment 4121).

18. After a short stay inside the apartment, agents observed Solano leave Apartment 4121. Solano appeared to be holding a rectangular package consistent in shape with the packaging of a kilogram of methamphetamine or other illicit drugs. Solano left the Morningside Courts complex in the gray Mustang.

19. Agents surveilled the gray Mustang until it entered the parking lot of an apartment complex located at 1170 Woodland Ave NE, Atlanta, GA 30324. After approximately one minute, the gray Mustang exited the apartment complex with a gray Honda Accord following. Agents maintained physical surveillance on the Honda Accord.

20. Atlanta Police Department (APD) Officers conducted a traffic stop on the Honda Accord and located approximately one kilogram of suspected methamphetamine. The driver told agents they purchased the methamphetamine from a Mexican male driving a dark-colored Mustang.

21. As APD conducted the traffic stop, agents at the Morningside Courts complex observed the gray Mustang return and Solano went into Apartment 4121.

### January 16, 2026: Solano and Ramirez sold one kilogram of methamphetamine

22. On January 16, 2026, DEA HIDTA Group 3 agents conducted surveillance on the gray Mustang outside of the Morningside Courts complex. At approximately 2:00 p.m., agents observed Solano, carrying a gray plastic grocery bag that appeared to contain weighted item/s, and Ramirez exit the apartment building 4000 and get into a white Mustang.

23. Agents saw the white Mustang travel to the apartment complex located at 1156 Woodland Ave NE, Atlanta, GA (the same area as the delivery of methamphetamine on January 14). Solano passed a gray plastic grocery bag through the passenger window of a blue Ford F-150 and quickly drove away.

24. Agents followed the F-150 until Georgia State Patrol (GSP) conducted a traffic stop on the F-150 in Gwinnett County, GA. In the vehicle, deputies located approximately one kilogram of suspected methamphetamine and one pound of marijuana inside a gray plastic grocery bag. The driver

admitted to purchasing methamphetamine and marijuana from two Hispanic males, who drove a Mustang, at the apartments located at 1156 Woodland Ave NE.

January 21, 2026: Solano arrested with one kilogram of methamphetamine

25. On January 21, 2026, at approximately 4:39 p.m., agents saw Solano exit Apartment 4121 carrying a brown paper bag in his arms. Agents saw Solano get into the driver's seat of the gray Mustang and drive away.

26. Agents surveilled the gray Mustang until APD conducted a traffic stop near 1899 Cheshire Bridge Rd NE, Atlanta, GA 30324. When APD Officers approached the gray Mustang, officers observed marijuana in plain view.

27. Solano was removed from the vehicle and a search was conducted on the vehicle. APD Officers found approximately one kilogram of suspected methamphetamine[1] in the brown paper bag Solano was seen carrying out of Apartment 4121.

January 21, 2026: Search of Apartment 4121 yielded approximately 44 kilograms of methamphetamine, a firearm, 38 pills, and the arrest of illegal aliens, Solano and Ramirez

28. As DEA agents were applying for a federal search warrant, agents observed three occupants of Apartment 4121 looking out of windows and into the parking lot of the apartment complex. Shortly after, one of the

---

[1] Field test returned a presumptive positive result for methamphetamine, a Schedule II controlled substance

occupants apparently identified law enforcement officers in the parking lot,[2] and the three occupants fled from Apartment 4121. Two of the occupants were detained without incident. Ramirez was detained after a short chase by law enforcement.

29. At 6:17 p.m., I obtained a residential search warrant (1:26-MC-0136) in the United States District Court, Northern District of Georgia, to search Apartment 4121.

30. Inside of Apartment 4121, agents located and seized approximately 44 kilograms of crystal methamphetamine,[3] 22 blue "M30" pills suspected to contain fentanyl,[4] 16 green "K8" pills,[5] 1 loaded 9mm FN pistol with 15 rounds of ammunition, and an undetermined amount of U.S. currency.

31. A photograph of the methamphetamine from Apartment 4121 is attached as Exhibit 1.

---

[2] Law Enforcement Officers were setting a perimeter/containment around the apartment building to prevent occupants from fleeing, pending a federal search warrant for the residence.

[3] Field test returned a presumptive positive result for methamphetamine, a Schedule II controlled substance.

[4] These pills have not been tested. However, based on my training and experience, the shape, color, and stamp on the pills indicates they likely contain fentanyl, a Schedule II controlled substance.

[5] These pills have not been tested. However, based on my training and experience, the shape, color, and stamp on the pills indicates they likely contain oxycodone, a Schedule II controlled substance.

32. A photograph of the firearm from Apartment 4121 is attached as Exhibit 2. The wallet portrayed in Exhibit 2 contained identification for Ramirez.

33. Juan Carlos Solano Lorenzo is a native and citizen of Mexico. There is no record showing that he made a lawful entry into the United States, nor does he have any immigration benefit that would allow him to enter or remain in the United States.

34. Jorge Luis Ramirez Bibiano is a native and citizen of Mexico. There is no record showing that he made a lawful entry into the United States, nor does he have any immigration benefit that would allow him to enter or remain in the United States.

35. Special Agent Corey Sullivan with the Bureau of Alcohol, Tobacco, Firearms and Explosives was consulted regarding the FN pistol seized from Apartment 4121. He confirmed the firearm traveled in interstate commerce and has been shipped or traveled across state lines.

## Conclusion

36. Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is probable cause to believe that on or about January 21, 2026, in the Northern District of Georgia, defendants, **Juan Carlos Solano Lorenzo** and **Jorge Luis Ramirez Bibiano** did knowingly and intentionally possess with intent to distribute a controlled substance, that is, at least 500 grams of a mixture or

substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(A).

37.     Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is also probable cause to believe that on or about January 21, 2026, in the Northern District of Georgia, defendant, **Jorge Luis Ramirez Bibiano**, did knowingly possess a firearm, in or affecting interstate commerce, knowing that he was an alien illegally and unlawfully in the United States, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(8).

## END OF AFFIDAVIT

# Exhibit 1



# Exhibit 2

